2010R01305/AM

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : Hon. |
| | : |
| | : Crim. No. 13-451-01 (RMB) |
| v. | : |
| | : 15 U.S.C. §§ 78j(b) and |
| | : 78ff; 17 C.F.R. § 240.10b-5; |
| EVERETT C. MILLER | : 18 U.S.C. § 2; 26 U.S.C. § 7201 |

**INFORMATION**

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

**COUNT ONE**
**(Securities Fraud)**

1. At all times relevant to this Information:

    a. Defendant MILLER resided in Marlton, New Jersey. Defendant MILLER was the founder, chief executive officer, president, principal, and sole owner of Carr Miller Capital LLC ("CMC"). Defendant MILLER controlled the finances of CMC and held himself out to be synonymous with CMC. Prior to founding CMC in or about June 2006, Defendant MILLER held Series 7, 24, 55, 63, and 65 securities licenses and was a registered financial advisor and representative for three separate financial institutions from in or about May 2000 through in or about June 2006.

    b. CMC was a Marlton, New Jersey based investment and financial services firm through which defendant MILLER and others solicited investments from individuals located in New Jersey, Pennsylvania, North Carolina, Arkansas, Texas, and elsewhere.

CMC had more than thirty affiliates and related entities, and more than seventy-five related bank accounts.

### The Scheme to Defraud

2.  From in or about August 2009 to in or about December 2010, in Burlington County, in the District of New Jersey, and elsewhere, the defendant,

EVERETT MILLER,

by use of the means and instrumentalities of interstate commerce, the mails, and facilities of national securities exchanges, directly and indirectly, knowingly and willfully used manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5 (Rule "10b-5") in connection with the purchase and sale of securities by (i) employing devices, schemes, and artifices to defraud members of the investing public; (ii) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (iii) engaging in acts, practices, and a course of business which operated and would operate as a fraud and deceit upon CMC's investors, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), Title 17, Code of Federal Regulations, Section 240-10b-5, and Title 18, United States Code, Section 2.

## Object of the Fraud

3.  The object of the fraud was for defendant MILLER to misappropriate monies that investors gave to CMC to invest, and to use the monies to support defendant MILLER's lifestyle, to pay other investors, and to cover payroll and operating expenses.

## Manner and Means of the Fraud

4.  From in or about June 2006 to in or about December 2010, defendant MILLER and others issued CMC promissory notes (the "Notes") to more than 190 investors located in New Jersey, Pennsylvania, North Carolina, Arkansas, Texas, and elsewhere. Defendant MILLER and CMC received approximately $41.2 million from these investors.

5.  The Notes were "securities" within the meaning of Sections 2(a)(1) of the Securities Act of 1933 and 3(a)(10) of the Securities Exchange Act of 1934. However, defendant MILLER and CMC never registered the Notes as securities with any federal or state agency, nor were the Notes exempt from such registration requirements.

6.  The Notes had a term of nine months and promised the investors returns of between 7-20% per year, and a return of the principal investment at the end of the nine-month period.

7.  Defendant MILLER and others falsely represented to the investors that their monies would be invested in certain ways, but the investors were not provided with material information

about their investments, or they were misled about the risks of their investments.

8. Defendant MILLER commingled and pooled the investors' monies into one of CMC's seventy-five related bank accounts and, unbeknownst to the investors, defendant MILLER used some of the monies in the following ways: to pay other investors, for CMC and its related entities' payrolls and operating expenses, and to support defendant MILLER's lifestyle, including:

    a. luxury automobile payments and purchases;

    b. home furnishings and electronic equipment;

    c. tickets to entertainment and sporting events;

    d. travel, lodging, and vacations;

    e. meals, entertainment, retail shopping, and groceries.

9. In sum, of the approximately $41.2 million invested with defendant MILLER and CMC:

    a. approximately $22.9 million was actually invested by defendant MILLER, resulting in losses of approximately $15.7 million;

    b. approximately $11.7 million was used to repay prior investors, most in Ponzi scheme fashion;

    c. approximately $8.8 million was used to pay CMC and its related entities' payroll and operating expenses, including approximately $7.8 million to CMC and its related entities' employees, brokers, and others; and

    d. approximately $663,156 was used to support defendant MILLER and his family's lifestyle.

**The Securities Fraud**

10.  On or about August 11, 2009, the Arkansas Securities Department ("ASD") initiated an investigation of defendant MILLER, CMC, and others for selling unregistered securities to investors, including in Arkansas, in the form of the Notes. On that same date, the ASD conducted an on-site examination at CMC's office in Little Rock, Arkansas ("CMI"). Also, on or about September 1 and 2, 2009, the ASD conducted a second on-site examination at CMI.

11.  On or about October 29, 2009, the ASD filed a complaint and a request for a cease and desist order against defendant MILLER, CMC, and others. On or about November 1, 2009, the ASD Commissioner issued a cease and desist order against defendant MILLER, CMC, and others from selling the Notes.

12.  From in or about August 2009 to in or about December 2010, despite knowing about the ASD's investigation of the Notes and despite also knowing that CMC did not have the ability to pay either the interest or the principal on any Notes, defendant MILLER and others continued to sell the Notes as unregistered securities to investors in New Jersey, Pennsylvania, Texas, and elsewhere.

13.  In total, during this time period, defendant MILLER and others issued Notes to approximately forty new investors located in New Jersey, Pennsylvania, Texas, and elsewhere, and defendant

MILLER and CMC received more than approximately $4.999 million from these new investors.

14. Other than interest payments made by CMC to these new investors, none of the principal investment of $4.999 million received by CMC on or after August 2009 was ever returned to the new investors, but was instead used to pay other investors, for CMC and its related entities' payrolls and operating expenses, and to continue to support defendant MILLER's lifestyle.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), Title 17, Code of Federal Regulations, Section 240-10b-5, and Title 18, United States Code, Section 2.

## COUNT TWO
### (Tax Evasion)

1. Paragraphs 1 through 14 of Count One of this Information are hereby reincorporated and alleged as if set forth in full herein.

2. For calendar years 2007, 2008, and 2009, defendant MILLER intentionally failed to provide the Internal Revenue Service ("IRS") with any information regarding the proceeds that he personally received in connection with the fraudulent scheme described in Count One, in the aggregate amount of approximately $663,156 (approximately $218,771 in 2007, approximately $244,879 in 2008, and approximately $199,507 in 2009).

3. Defendant MILLER's willful attempt to evade his taxes and the payment thereof for calendar years 2007 through 2009, and his intentional failure to provide the IRS with any information regarding the proceeds of his fraudulent scheme, resulted in a tax loss to the United States of approximately $47,342.

4. Specifically, despite knowing that he needed to file federal tax returns because he had previously filed tax returns for calendar years 1990 through 1996, defendant MILLER failed to file individual tax returns with the IRS for calendar years 2007 through 2009, and he also did not file a tax return since at least 1998.

5. Additionally, in an affirmative act to conceal the sources of his income, defendant MILLER diverted CMC investor

funds from CMC and its related entities' business bank accounts to his personal account, and defendant Miller used CMC investor funds to pay for his and his family's personal expenses. Further, defendant MILLER did not maintain adequate books and records for CMC or any of CMC's thirty affiliates and related entities.

6. On or about April 15, 2009, in Burlington County, in the District of New Jersey and elsewhere, the defendant,

EVERETT MILLER,

did willfully attempt in any manner to evade and defeat any tax imposed by this title and the payment thereof for the calendar year 2008.

In violation of Title 26, United States Code, Section 7201, and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

1. The allegations contained in this Information are incorporated by reference as though set forth in full herein for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2. The United States hereby gives notice to defendant MILLER that, upon conviction of the offense charged in Count One of this Information, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c), which requires any person convicted of such offense to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offense.

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant MILLER:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in paragraph 2.

*[signature]*
PAUL J. FISHMAN
UNITED STATES ATTORNEY

CASE NUMBER:

**United States District Court
District of New Jersey**

UNITED STATES OF AMERICA

v.

EVERETT C. MILLER

**INFORMATION FOR**

15 U.S.C. §§ 78j(b) and 78ff
17 C.F.R. § 240.10b-5
18 U.S.C. § 2
26 U.S.C. § 7201

**PAUL J. FISHMAN**
UNITED STATES ATTORNEY, NEWARK, NEW JERSEY

AARON MENDELSOHN
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
(973) 645-2712